IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| United States of America, | Cr. No. 10-00788-01 HG |
| Plaintiff, | |
| vs. | |
| Ambrosio Santos; Cesar Arevalo, | |
| Defendants. | |

**ORDER DENYING DEFENDANT AMBROSIO SANTOS'S MOTION TO SUPPRESS**

Defendant Ambrosio Santos was indicted for conspiring with co-Defendant Cesar Arevalo to possess and distribute more than 500 grams of methamphetamine. (Doc. 21). Santos pled not guilty. (Doc. 30). Santos has filed a MOTION TO SUPPRESS EVIDENCE (Doc. 35), in which he moves to suppress all evidence obtained from him, including his oral and written statements, and items seized from his home.

**PROCEDURAL HISTORY**

On October 1, 2010, the Government filed a Criminal Complaint against Defendants Ambrosio Santos and Cesar Arevalo. (Doc. 1).

On October 27, 2010, a Grand Jury returned an Indictment charging Defendant Santos with conspiracy to possess and distribute 500 grams or more of methamphetamine. (Doc. 21).

On December 21, 2010, Defendant Santos filed a Motion to

1

Suppress Evidence. (Doc. 35).

On January 11, 2011, a hearing was held on Defendant Santos's Motion. (See Doc. 39).

**ANALYSIS**

Defendant Santos was arrested at the Honolulu Airport. Santos moves to suppress all evidence subsequently obtained from him, including his oral and written statements, and items seized from his home. Santos argues that his arrest (and the subsequent "seizure" of his home) was unlawful because it was performed without a warrant or probable cause to believe he had committed a crime. He also argues that his statements must be suppressed because they were not voluntary.

Thayne Costa, an officer with the Honolulu Police Department, testified at a hearing on Defendant Santos's Motion to Suppress. Mr. Costa has been an officer with the Honolulu Police Department for 18 years, and he has more than 5 years of experience conducting drug investigations. He is currently assigned to the Hawaii Airport Task Force, which is a Drug Enforcement Agency unit. Officer Costa was involved in the arrest of Santos and Co-Defendant Cesar Arevalo, and he testified about the events that led him and other officers to believe Santos had committed a crime. Officer Costa's testimony was not controverted by any testimony or other evidence put forward by the Defendant. The Court finds that Officer Costa's testimony was credible.

Officer Costa testified that he initially encountered Santos's Co-Defendant Cesar Arevalo at the Honolulu Airport. Investigations of Arevalo revealed that Arevalo had transported methamphetamine in his luggage on a flight from San Francisco. Arevalo provided information that in turn led Officer Costa to believe Santos had driven to the airport in order to transport Arevalo and the methamphetamine, leading to Santos's arrest.

According to Officer Costa, on September 30, 2010, he and fellow officers were conducting drug interdiction work at the Honolulu Airport, which involved observing suspicious passengers. Officer Costa noticed a male, later identified as Defendant Cesar Arevalo, exiting a Delta airlines flight from San Francisco. Arrevalo caught Officer Costa's attention because he was alone, nicely dressed, and appeared very nervous. On his way to the baggage claim, Arevalo repeatedly looked back and from side to side, as if to see if anyone was following him, and began making frequent cell phone calls. He was pacing and frequently going to the restroom. Officer Costa testified that Arevalo exhibited many of the characteristics he had been taught to look for in airport drug interdiction training.

Officer Costa testified that he waited until Arevalo picked up his suitcase, and then approached him and displayed his law enforcement credentials. Officer Costa told Arevalo that he was not under arrest, and was free to go at any time. Officer Costa

3

asked for identification or a boarding pass, and for consent to search Arevalo's luggage. Arevalo provided an Oregon ID card and consented to the search.

Officer Costa and other officers discovered methamphetamine wrapped in black electrical tape concealed under a wooden board within the bottom liner of a duffel type bag. Arevalo was placed under arrest. After being read his Miranda rights and waiving them, Arevalo stated that he was hired by a man named "Angel," who instructed him to fly to Hawaii and give the suitcase to a man named "June," who would pick him up at the airport and drive him to a house where he could stay. Arevalo stated that he was given "June's" phone number, and told to give the bag and drugs to "June," who would then pay Arevalo.

Officer Costa remembered an earlier drug interdiction case he had investigated in which methamphetamine had been found concealed under a wooden board at the bottom of duffel type bag, sown in the bottom liner, and wrapped in black electrical tape. Costa suspected a connection with the earlier case because Arevalo's bag was similar and concealed the methamphetamine in a similar manner. Costa also suspected a connection because during the previous investigation one of the men found with methamphetamine in a similar suitcase, Juan Carlos Arreola, described a man known as "June." Arreola identified "June" to Officer Costa, and took Costa to "June's" residence and pointed out where "June" works. In the

course of the investigation, Officer Costa obtained a picture of "June," and determined that his name was Ambrosio Santos.

Officer Costa testified that he suspected that the "June" he identified as Ambrosio Santos in the previous investigation was the same "June" who Arevalo said was driving to the airport to pick him up. Officer Costa retrieved a photo of Santos from his office, and showed it to the other officers. He explained that Santos could possibly be the courier arriving to pick up Arevalo, and to look for him at the baggage claim curb.

According to Officer Costa, Arevalo agreed to cooperate with the officers by calling "June" under their guidance so that June could be apprehended. After making the calls to "June," Arevalo determined that "June" was still at the airport, was near baggage claim D, and was driving a gray Nissan Xterra. Officer Costa testified that he relayed this information to the officers at the curb by cell phone. Shortly after, the officers located a man in a gray Nissan Xterra, near baggage claim D, who appeared to be the man in the photo provided by Officer Costa. Officer Costa instructed the officers to arrest the man. He was later identified as Defendant Ambrosio Santos.

**I. There Was Probable Cause To Arrest Santos**

"Probable cause" exists when, "under the totality of the circumstances known to the arresting officers, a prudent person

would have concluded that there was a fair probability that [the suspect] had committed a crime." United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986).

The officers had ample reason to believe Santos had committed a crime, and had probable cause to arrest him. The information available to the officers that supported probable cause included: (1) Arevalo's suitcase contained methamphetamine wrapped in black electrical tape; (2) Arevalo stated that he had been instructed that a man named "June" would be picking him up at the airport and would pay him for the methamphetamine; (3) Arevalo stated that he had been given "June's" phone number; (4) Officer Costa had a photo of a man known as "June," and knew that "June" was a suspected drug courier based on information provided by a drug courier in a previous case, and that "June" was under investigation for suspected drug trafficking; (5) Arrevalo stated that "June" was driving a gray vehicle and would be near baggage claim D; (6) a man who matched the photo of "June" was near baggage claim D in a gray car. Based on this information and the totality of the circumstances, the officers had probable cause to believe that Santos had arrived at the airport to pick up Arevalos in furtherance of a conspiracy to possess and distribute methamphetamine.

At the hearing, Defendant objected to Officer Costa's testimony regarding the information communicated by the arresting

officers at the curb near baggage claim D on the ground that such testimony was hearsay and not based on personal knowledge. Defendant argued that the officers who arrested Santos needed to testify as to their personal knowledge. In resolving a motion to suppress evidence, the Court is not bound by the rules of evidence (other than those concerning privileges), and hearsay may be admitted. Fed. R. Evid. 104(a); United States v. Matlock, 415 U.S. 164, 164 (1974). To determine whether probable caused existed for a search or arrest, the Court may rely on the testimony of a police officer regarding what he was told by other witnesses, including other officers. United States v. Signal, 500 F.2d 1118 (10th Cir. 1974). Officer Costa's testimony that the arresting officers told him, over the phone, that they saw a man who looked like the "June" in the photo shown to them by Costa, and that he was driving a gray car near baggage claim D, was admissible. It was proper for Officer Costa to rely on that communicated information as basis for probable cause, and to instruct the officers to arrest Santos. Under the "collective knowledge doctrine," moreover, courts may "impute police officers' collective knowledge to the officer conducting a stop, search, or arrest." United States v. Villasenor, 608 F.3d 467, 474 (9th Cir. 2010). Because Officer Costa and the arresting officers were in communication, Officer Costa's knowledge may be imputed to the arresting officers, and the arresting officers' knowledge may likewise be imputed to Officer Costa, who

7

gave the arrest order. Id.; see also United States v. Ledford, 218 F.3d 684, 688 (7th Cir. 2000) (Police officer could testify about search of trunk, even though he did not conduct the search, because the search was conducted jointly and the knowledge of the officer who conducted search was imputed.")

Officer Costa's testimony at the hearing is consistent with his signed affidavit, which was attached to the Complaint. Defendant presented no evidence to controvert Officer Costa's testimony. The Court finds Officer Costa's testimony credible.

Defendant's Motion to Suppress all evidence that resulted from his arrest is **DENIED.**

## II. Voluntariness of Statements

Defendant argues that the statements he made to the police officers after his arrest must be suppressed because they were not voluntary. A confession that is coerced or involuntary violates the Due Process clause of the Fifth Amendment of the United States Constitution, and must be excluded. Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). When a confession is challenged as involuntary, "the prosecution must prove by a preponderance of the evidence that the confession was voluntary." Lego v. Twomey, 404 U.S. 477, 489 (1972). The government must demonstrate that the defendant's confession was "the product of an essentially free and unconstrained choice." Schneckloth v. Bustamonte, 412 U.S. 218, 225

8

(1973).  "In determining the voluntariness of a confession, we 'examine[ ] whether a defendant's will was overcome by the circumstances surrounding the giving of a confession. Doody v. Schriro, 596 F.3d 620, 638 (9th Cir. 2010) (internal quotation marks and citation omitted) (overruled on other grounds). Voluntariness is determined by the "totality of the circumstances," with "close scrutiny of the facts." Id.

**A.  Defendant Waived His Miranda Rights**

Officer Costa testified that after Santos was arrested and brought to his office, he immediately advised Santos of his rights in the presence of Officer Darren Lee.  Santos used a DEA "Advice of Rights" form, a copy of which was admitted as Exhibit 2.  The form sets forth the required Miranda warnings. (See Exhibit 2 (Doc. 39-2)).  Officer Costa testified that he gave Santos a copy so that Santos could read along as he read Santos the rights.  Santos stated that he understood his rights, he initialed each line, and wrote "yes" on the form to indicate that he understood his rights. He also indicated on the form that he was willing to answer some questions, and he signed the form at the bottom and wrote his social security number.  Officers Costa and Lee both signed the form to indicate that they witnessed Santos being told his rights and agreeing to waive them.

Officer Lee's testimony corroborates Officer Costa's testimony.  Officer Lee testified that he was present when Santos

was read his rights, and he observed Santos agreeing to waive them. Defendant has presented no evidence to controvert either Officer Santos's or Lee's testimony, which the Court finds credible. The Court finds that Santos voluntarily waived his Miranda rights.

### B. Defendant's Statements Were Voluntary

Based on the uncontroverted testimony of Officers Costa and Lee, the Court finds that Defendant's statements were voluntary. Officers Costa and Lee testified to the following relevant facts: (1) Santos was interviewed by Officers Costa and Lee in an air-conditioned, carpeted, 10 by 10 room, with a small desk and 3 chairs, including one for the Defendant; (2) Santos was not handcuffed during the interview; (3) neither Costa nor Lee were visibly armed; (4) Santos was spoken to in English and had no trouble understanding oral or written English; (5) Santos appeared in good health, not under the influence of drugs or alcohol, and he had no complaints; (6) Santos was not promised anything in return for waiving his right to remain silent; (7) Santos was never threatened; (8) Costa and Lee made no attempts to coerce Santos into speaking.

The preponderance of the evidence shows that Santos's statements to the officers were given freely, knowingly, and willingly. There is no evidence that Santos's will was overcome, that he was coerced, or that any of his statements were the product of anything other than his free and unconstrained choice.

The Motion to Suppress Defendant's statements is **DENIED.**

**CONCLUSION**

The preponderance of the evidence shows that there was probable cause to arrest Plaintiff, and his statements to the police were given voluntarily. Defendant's Motion to Suppress is **DENIED.**

IT IS SO ORDERED.

DATED: January 21, 2011, Honolulu, Hawaii.



/S/ Helen Gillmor

Helen Gillmor
United States District Judge

*United States of America v. Ambrosio Santos; Cesar Arevalo;* Criminal No. 10-00788-01 HG; **ORDER DENYING DEFENDANT AMBROSIO SANTOS'S MOTION TO SUPPRESS.**